# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

Democratic National Committee and Democratic Party of Wisconsin,

        Plaintiffs,

    v.

Marge Bostelmann, Julie M. Glancey, Ann S. Jacobs, Dean Knudson, Robert F. Spindell, Jr., and Mark L. Thomsen, in their official capacities as Wisconsin Elections Commissioners,

        Defendants.

Case No. 3:20-cv-249-wmc

---

Sylvia Gear, Malekeh K. Hakami, Patricia Ginter, Claire Whelan, Wisconsin Alliance for Retired Americans, League of Women Voters of Wisconsin,

        Plaintiffs,

    v.

Dean Knudson, Julie M. Glancey, Robert F. Spindell, Jr., Mark L. Thomsen, Ann S. Jacobs, Marge Bostelmann, in their official capacity as members of the Wisconsin Elections Commission, Meagan Wolfe, in her official capacity as the Administrator of the Wisconsin Elections Commission,

        Defendants.

Case No. 3:20-cv-278-wmc

---

## THE WISCONSIN LEGISLATURE'S PROPOSED COMBINED AMICUS CURIAE BRIEF IN OPPOSITION TO THE *DEMOCRATIC PARTY* PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION AND RECONSIDERATION OF THE COURT'S RULING ON THE BY-MAIL ABSENTEE DEADLINE AND DOCUMENTATION REQUIREMENTS, AND THE *GEAR* PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

# INTRODUCTION

The State of Wisconsin is one of the States that has chosen to give its voters a no-excuse absentee voting option.[1] The State balances this permissive feature with critically important measures to protect the integrity and public legitimacy of such broadly available, no-excuse-needed absentee voting. "[T]he striking of th[is] balance between discouraging fraud and other abuses and encouraging turnout is quintessentially a legislative judgment . . . ." *Griffin v. Roupas*, 385 F.3d 1128, 1131 (7th Cir. 2004). As relevant here, the State's election-integrity provisions for absentee voting include that voters provide proof of residency to complete voter registration remotely, Wis. Stat. § 6.34(2); that voters provide a copy of their photo ID to vote absentee, Wis. Stat. §§ 6.86(1), 6.87(1); and that voters obtain the signature of a witness on their absentee ballot, Wis. Stat. § 6.87(4). These laws further Wisconsin's "indisputably . . . compelling interest in preserving the integrity of its election process," *Eu v. San Francisco Cty. Democratic Cent. Comm.*, 489 U.S. 214, 231 (1989); *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (per curiam), by ensuring that "only the votes of eligible voters" are counted, *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 196 (2008) (controlling plurality of Stevens, J.).

These provisions are so essential that a secure and publicly legitimate election simply cannot be run without them. "Voting fraud is a serious problem in U.S. elections generally," and that fraud is *especially* "facilitated by absentee voting,"

---

[1] *See* Nat'l Conference of State Legislatures, *Absentee and Early Voting* (Feb. 20, 2020), *available at* https://www.ncsl.org/research/elections-and-campaigns/absentee-and-early-voting.aspx ("[I]n one-third of the states, an excuse [for voting absentee] is required . . . .").

*Griffin*, 385 F.3d at 1130–31, because "voting by mail makes vote fraud much easier to commit," *Nader v. Keith*, 385 F.3d 729, 734 (7th Cir. 2004). As the landmark bipartisan commission—chaired by President Jimmy Carter and Secretary of State James A. Baker III—explained, "[a]bsentee ballots remain the largest source of potential voter fraud." Carter-Baker Comm'n on Fed. Elections Reform, *Building Confidence in U.S. Elections* 46 (2005) ("Carter-Baker Comm'n").

As a threshold matter, this Court should deny the *Democratic Party* Plaintiffs' Motion—which asks this Court to take a sledgehammer to all of the election-integrity provisions—because these Plaintiffs have not shown a likelihood of success on the merits. This Court properly concluded in its prior order that the *Democratic Party* Plaintiffs have not put forward a sufficient "record" to disable two of these provisions (proof of residency and photo ID), especially in light of the Supreme Court's and Seventh Circuit's upholding of such provisions. Order, Dkt. 37, at 16.[2] Nothing in these Plaintiffs' submissions here cures that deficiency of proof, as discussed in detail below, especially for the wildly overbroad relief that they seek. Instead, the paucity of their evidence only highlights that Wisconsinites can cast a ballot in the ongoing election through "reasonable effort[s]," which is all the Constitution requires. *Frank v. Walker*, 819 F.3d 384, 386–87 (7th Cir. 2016) ("*Frank II*"). And the *Gear* Plaintiffs' Motion—which asks this Court to disable the witness-signature requirement—fails for much the same reasons.

---

[2] All citations to "Dkt." refer to the docket in *Democratic National Committee v. Bostelmann*, No. 3:20-cv-249. Citations to "*Gear* Dkt." refer to the docket in *Gear v. Knudson*, No. 3:20-cv-278.

This Court should also deny the *Democratic Party* Plaintiffs' Motion and the *Gear* Plaintiffs' Motion on the equities. The State and the Nation face an extremely serious public-health challenge, and voters should abide by the directives and guidance issued by competent public authorities. But these public authorities have explained that at least some human interaction can go on, even in these difficult times. If citizens can go to the store to get household products, travel to and from businesses that provide essential services, and engage in outdoor exercise, then the State can ask those same citizens to take reasonable efforts to ensure that our democracy functions in a way that is secure and publicly legitimate. This includes asking citizens to abide by the reasonable and limited steps of taking a photo of their ID on their smartphones and asking their loved ones or neighbors to witness their absentee ballot. This can all be accomplished while taking the types of sensible precautions and social-distancing measures that citizens—including some of the declarants here—already take when, for example, they go to the grocery store.

## ARGUMENT

### I.   This Court Should Deny The Preliminary Injunction Motions

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (citation omitted); *accord Courthouse News Serv. v. Brown,* 908 F.3d 1063, 1068 (7th Cir. 2018). Movants bear a heavy burden to obtain preliminary-injunctive relief, *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of Am., Inc.*, 549 F.3d 1079, 1085–86 (7th Cir. 2008), and must show as a threshold matter that: "(1)

without such relief, [they] will suffer irreparable harm before final resolution of [their] claims; (2) traditional legal remedies would be inadequate; and (3) [they have] some likelihood of success on the merits." *Courthouse News Serv.*, 908 F.3d at 1068. If a movant satisfies each of those threshold requirements, the Court must then "weigh the harm the plaintiff[s] will suffer without an injunction against the harm the defendant[s] will suffer with one." *Id.* "The more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor." *Id.* (citation omitted). Finally, the Court then must consider "whether the preliminary injunction is in the public interest, which entails taking into account any effects on non-parties." *Id.*

### A. The *Democratic Party* and *Gear* Plaintiffs Have No Likelihood Of Success On The Merits

The *Anderson/Burdick*, procedural-due-process, and equal-protection claims at issue here require the movants to make a substantial evidentiary showing on the merits, yet the movants here have made no such showing. Below, the Legislature describes the legal standard governing the claims at issue, and then explains how the movants' failure to present competent evidence means that they have no likelihood of success on the merits of any of their claims.

For the *Anderson/Burdick* claim both sets of movants raise, Dkts. 55 at 14–15, 62 at 11–18; *Gear* Dkt. 17 at 5–10, *see Burdick v. Takushi*, 504 U.S. 428 (1992); *Anderson v. Celebrezze*, 460 U.S. 780 (1983), the movants must satisfy a two-step inquiry, bearing a heavy burden on both steps. First, they must establish a cognizable burden on the right to vote from a challenged law, including that burden's

severity. *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997). Second, they must show that this burden outweighs the State's interest. *Id.* "If the burden on the plaintiffs' constitutional rights is 'severe,' a state's regulation must be narrowly drawn to advance a compelling state interest." *Stone v. Bd. of Election Comm'rs*, 750 F.3d 678, 681 (7th Cir. 2014) (citation omitted). But "[i]f the burden is merely 'reasonable' and 'nondiscriminatory,' by contrast, the government's legitimate regulatory interests will generally carry the day." *Id.* The sufficiency of a State's justification is generally a "legislative fact," accepted as true so long as it is reasonable. *Frank v. Walker*, 768 F.3d 744, 750 (7th Cir. 2014) ("*Frank I*"); *see, e.g., Crawford*, 553 U.S. at 194–97 (controlling plurality of Stevens, J.).

Where, as here, the challenge involves a "broad attack" to an election law's operation to *all* impacted voters—not merely relief for a narrow category of especially burdened voters—the movants again "bear a heavy burden of persuasion" to prevail. *Crawford*, 553 U.S. at 200 (controlling plurality of Stevens, J.). As the Seventh Circuit held in *Frank II*, "the burden some voters face[ ]" under a challenged law "[can]not prevent the state from applying the law generally." 819 F.3d at 386; *accord Griffin*, 385 F.3d at 1130. Thus, a challenge to an election law based on the burdens it places on some individual voters must proceed on an as-applied basis, after an evidentiary showing by the plaintiff as to those specific voters. *Frank II*, 819 F.3d at 386–87. In those narrower challenges, a plaintiff is entitled to as-applied relief only upon a showing that specific voters or a specific category of voters cannot cast their ballot after undertaking "reasonable effort[s]." *Id.* The Supreme Court has held that

- 6 -

"making a trip to the [D]MV, gathering the required documents and posing for a photograph surely do not qualify as a substantial burden on the right to vote." *Crawford*, 553 U.S. at 198 (controlling plurality of Stevens, J.).

The inquiry here is the cognizable burden on the right to *vote*, not the ability to vote absentee, because the "right to receive [or cast] absentee ballots" is, itself, *not* constitutionally protected or required. *McDonald v. Bd. of Election Comm'rs*, 394 U.S. 802, 807 (1969); *see, e.g.*, *Mays v. LaRose*, 951 F.3d 775, 792 (6th Cir. 2020) ("[T]here is no constitutional right to an absentee ballot."). Thus, the Seventh Circuit has rejected a "blanket right of registered voters to vote by absentee ballot," explaining that "it is obvious that a federal court is not going to decree weekend voting, multi-day voting, all-mail voting, or Internet voting," in order to avoid "hardship[s]" that certain voters may experience. *Griffin*, 385 F.3d at 1129–30.

Moving to the *Democratic Party* Plaintiffs' procedural-due-process claim, Dkts. 55 at 15–17, 62 at 18–19, the movants must establish that they possess a protected liberty/property interest and then, under the controlling standard in *Mathews v. Eldridge*, 424 U.S. 319 (1976), demonstrate that the process afforded by the State is insufficient in light of: (1) the plaintiff's "private interest" at stake; (2) "the risk of an erroneous deprivation," which requires consideration of the current process that the State affords, together with the "probable value" of any additional procedural safeguards; and (3) the "Government's interest." *Id.* at 335. Each of these showings imposes upon the movants the heavy burden to "present [ ] *evidence* concerning the process" that they claim is "required under the *Mathews* balancing test to protect

[their] alleged liberty interest." *Colon v. Schneider*, 899 F.2d 660, 670 (7th Cir. 1990) (emphasis added). Without such "evidence . . . in the record," there is nothing that would "warrant" a court "upsetting [the Legislature's] judgment" that these election laws are the appropriate "manner in which it wishes" to conduct its elections. *Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 334 (1985) (citing *Schweiker v. McClure*, 456 U.S. 188, 200 (1982); *Mathews*, 424 U.S. at 344, 349).

Finally, the *Democratic Party* Plaintiffs assert an equal-protection claim premised on *Bush v. Gore*, 531 U.S. 98 (2000) (per curiam). Dkts. 55 at 17–18, 62 at 20–21. This claim would require movants to demonstrate, with competent evidence, that specific election "procedures" result in "arbitrary and disparate treatment of the members of [the State's] electorate." *Bush*, 531 U.S. at 105. That said, and as also discussed below, the *Democratic Party* Plaintiffs cannot bring a *Bush v. Gore* claim here. Such a claim is "limited to" the "special instance of a statewide recount under the authority of a single state judicial officer," which is not the circumstance here. *Id.* at 109. Further, this Court lacks jurisdiction over this equal-protection claim, even if the *Democratic Party* Plaintiffs could have asserted it, since they complain only of the actions of independent third parties ("Wisconsin cities and counties") and not the actions of the Commissioners they have named as defendants. *E.g.*, Dkt. 55 ¶ 61; *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (holding that plaintiffs lack standing where they complain of "the independent action of some third party not before the court," as opposed to "the defendant" (citation omitted)).

**1. Plaintiffs Have Not Met Their Burden To Succeed On Their Challenge To Wisconsin's Election-Integrity Measures**

Wisconsin's election-integrity measures serve a critical role in protecting the security and public legitimacy of Wisconsin's decision to permit no-excuse absentee voting. As the bipartisan Carter-Baker Commission determined, "[a]bsentee ballots remain the largest source of potential voter fraud." Carter-Baker Comm'n 46. The Seventh Circuit, likewise, recognized that "[v]oting fraud is a serious problem in U.S. elections . . . and it is facilitated by absentee voting." *Griffin*, 385 F.3d at 1130 (citing John C. Fortier & Norman J. Ornstein, Symposium: *The Absentee Ballot and the Secret Ballot: Challenges for Election Reform*, 36 U. Mich. J. L. & Reform 483 (2003)); William T. McCauley, Comment: *Florida Absentee Voter Fraud: Fashioning an Appropriate Judicial Remedy*, 54 U. Miami L. Rev. 625, 631–32 (2000); Michael Moss, *Absentee Votes Worry Officials as Nov. 2 Nears*, N.Y. Times, Sept. 13, 2004, at A1)); *see Nader*, 385 F.3d at 734 ("[V]oting by mail makes vote fraud much easier to commit." (citing Moss, *Absentee Votes Worry Officials as Nov. 2 Nears*)). Courts have recognized the "reality of fraud . . . in the mail-in ballot context" for decades. *Veasey v. Abbott*, 830 F.3d 216, 239 (5th Cir. 2016) (en banc); *see Wrinn v. Dunleavy*, 440 A.2d 261, 270 (Conn. 1982) ("[T]here is considerable room for fraud in absentee voting . . . ."). And so have even Justices who believed certain measures for in-person election integrity go too far. *Crawford*, 553 U.S. at 225 (Souter, J., dissenting) (noting that "absentee-ballot fraud . . . is a documented problem").

This Court concluded that the *Democratic Party* Plaintiffs previously failed to develop a sufficient "record" to have a likelihood of success on two Wisconsin election-

integrity provisions—proof of residency and photo ID—including because of binding Supreme Court and Seventh Circuit caselaw upholding such provisions. Order, Dkt. 37 at 16. Below, the Legislature addresses each voter-integrity measure challenged by the *Democratic Party* Plaintiffs (and, for the last of those measures, by the *Gear* Plaintiffs) in turn, explaining how the movants have failed to carry their burden for across-the-board relief from these crucial provisions, which means that they have no likelihood of success on the merits of any of their claims.

### a. Section 6.34(2)'s Proof-Of-Residency Requirements

Section 6.34(2) provides that "upon completion of a [voter] registration form," including by-mail and electronic registration, each voter "shall provide an identifying document that establishes [their] proof of residence." Wis. Stat. § 6.34(2). As explained by Meagan Wolfe, the Administrator of the Wisconsin Elections Commission, voters can satisfy this requirement by providing any of "many acceptable forms of proof of residency," which they can submit "as a hard copy, paper document or an electronic document on a smartphone, tablet, or computer." Dkt. 24 ("Wolfe Decl.") ¶¶ 23–24. This easy-to-satisfy requirement, *Frank I*, 768 F.3d at 748, promotes election integrity because the State has a compelling interest in "orderly administration and accurate recordkeeping . . . for carefully identifying all voters [who may] participat[e] in the election process," which ensures that the State counts "only the votes of eligible voters," *Crawford*, 553 U.S. at 196 (controlling plurality of Stevens, J.); *see also* Order, Dkt. 37 at 16. This requirement is particularly important in the absentee voting context, where the State lacks the increased ability to protect against voting fraud that comes from the voter casting the ballot in person.

The *Democratic Party* Plaintiffs have brought an overbroad claim against Section 6.34(2), asserting that it burdens voting rights and infringes procedural-due-process rights because, in light of COVID-19, voters lack the ability to provide a copy of their proof-of-residency documents because of the Governor's Order. Dkt. 55 at 4; *see* Dkt. 54-3 (Emergency Order #12). While movants attempt to substantiate these arguments with declarations from two college students, their proffered proof is insufficient, especially for the broad-based relief they seek. The relevant declarations here are from Declarants Temes and Bridgeford. *See* Dkts. 28 ("Temes Decl."), 29 ("Bridgeford Decl."). Declarants Temes and Bridgeford are college students at the University of Wisconsin Eau Claire and Marquette University, respectively, and both claim that they currently lack access to "scanner[s] or [ ] copy machine[s]," and do not want to risk traveling in public to locate one due to COVID-19. Temes Decl. ¶ 6; Bridgeford Decl. ¶ 5. This Court's prior order already "acknowledge[d]" these declarations when it denied the *Democratic Party* Plaintiffs' request for a temporary restraining order against this provision. Dkt. 37 at 17 n.11.

These two declarations do not carry the *Democratic Party* Plaintiffs' burden here. Voters may submit proof-of-residence documents in electronic format, allowing them to use their smartphones to prove residency without needing to find a scanner, copier, or printer. *See* Dkt. 25 ("Tseytlin Decl.") Exs. 11 (Wisconsin Elections Commission, *Proof of Residence for Voter Registration* (rev. Feb. 19, 2019))[3]

---

[3] Available at https://elections.wi.gov/sites/elections.wi.gov/files/2019-01/27-28%20Proof%20of%20Residence%202019.pdf.

(explaining that citizens registering to vote may present their Proof of Residence document as "an electronic document on your smartphone, tablet, or computer"), 12 (Wisconsin Elections Commission, "I want to vote absentee" publication)[4] (explaining that voters may request absentee ballots by email or by clicking "Vote Absentee" on www.myvote.wi.gov.). Given that the "vast majority of Americans—96%—now own a cellphone of some kind," with "81%" of Americans owning "smartphones," this avenue of complying with Section 6.34(2) is readily available. Tseytlin Decl. Ex. 13 (Pew Research Center, *Mobile Fact Sheet* (June 12, 2019)).[5] Neither Declarant Temes nor Bridgeford even alleges that they are without access to a smartphone and, given that both are college-aged adults, it is reasonable to conclude that they likely have such access. *Id.* (96% of Americans ages 18–29 own a smartphone).

Further, facilities offering scanning services to the public remain open. Tseytlin Decl. Ex. 10 (The UPS Store Note to Customers (rev. Mar. 18, 2020)).[6] The Governor's "Safer at Home" Order provides numerous exceptions, such as "leav[ing]" for "essential government functions," which would include completing necessary election-related tasks. *See* Dkt. 54-3 (Emergency Order #12) (capitalization altered); *see also* U.S. Department of Homeland Security, Cybersecurity & Infrastructure Security Agency (CISA), *Memorandum on Identification of Essential Critical Infrastructure Workers During COVID-19 Response* (Mar. 28, 2020).[7] The UPS Store

---

[4] Available at https://elections.wi.gov/voters/absentee.

[5] Available at https://www.pewresearch.org/internet/fact-sheet/mobile/.

[6] Available at https://www.theupsstore.com/important-update.

[7] Available at https://www.cisa.gov/publication/guidance-essential-critical-infrastructure-workforce.

has informed customers that its "retail locations are designated as essential and remain open. This means that [they] remain open to provide essential services such as mail and package receiving, shipping, *printing* and notary." Tseytlin Decl. Ex. 10 (emphasis added). Further, the public may use these facilities consistent with social-distancing guidelines. *See* Dkt. 54-3 (Emergency Order #12). As The UPS Store explains, it "strongly encourage[s]" its franchisees to "[p]ractice social distancing and limit the number of customers in the store." Tseytlin Decl. Ex. 10. If some voter lacking a smartphone needs to go to a UPS store, that would be a "reasonable effort" under *Frank II*.

And, of course, voters generally retain the option to register in person, under Wisconsin's "easy" same-day, in-person voter registration provision. *Frank I*, 768 F.3d at 748. In-person voting, like all needed voting actions, can be done consistent with all public health and safety guidelines, including the Governor's Order. *See supra* p. 12. After all, public-health guidance from the CDC and the Governor explain that citizens can go to grocery stores, so long as they abide by social distancing measures while doing so, Dkt. 54-3 (Emergency Order #12); *see* Tseytlin Decl. Ex. 1 at 1, and voters can similarly take needed steps to keep democracy functioning.

Finally, even if Declarants Temes and Bridgeford truly had no way to submit proofs of residency and cannot vote (and thus register) in person for some reason, that is insufficient to afford the *Democratic Party* Plaintiffs the broad relief they seek. Movants have not tailored their request, under *Frank II*, to just voters who cannot register to vote after undertaking "reasonable effort[s]." 819 F.3d at 386–87. These

two declarations cannot disprove the "plainly legitimate sweep" of this critical election-integrity provision. *See Crawford*, 553 U.S. at 202 (controlling plurality of Stevens, J.) (citations omitted).

### b. Section 6.87(1)'s Photo ID Requirements

Section 6.87(1) provides that an "absent elector shall enclose a copy of his or her proof of identification or any authorized substitute document with his or her application" for an absentee ballot. Wis. Stat. § 6.87(1). Section 6.86(1)(ar), in turn, states that a voter who "applies for an absentee ballot in person at the clerk's office" must "present[ ] proof of identification" to the clerk. Wis. Stat. § 6.86(1)(ar). These photo ID provisions allow the State to "carefully identify[ ] all voters [who may] participat[e] in the election process," *Crawford*, 553 U.S. at 196 (controlling plurality of Stevens, J.), which promotes the State's compelling interest in election integrity. That is why such photo ID laws have withstood constitutional scrutiny, time and again, including in Wisconsin, *see, e.g.*, *Crawford*, 553 U.S. 181; *Frank I*, 768 F.3d at 751, as this Court noted in its prior Order, Dkt. 37 at 15–17.

As Administrator Wolfe explained, complying with the photo ID requirement for absentee voting is easy, and can be done from home by the vast majority of electors. If an elector has a photo ID on file with the clerk's office, then that serves as proof of photo ID. Wolfe Decl. ¶ 31. If the voter does not have a photo ID on file, then that voter needs only to take a photo of the ID and upload that copy. *Id.* "Devices such as a computer, tablet, or phone can take a picture and upload it." *Id.* "The entire process of requesting a ballot, taking a picture of an ID, and uploading the picture can be done with a smart phone." *Id.*

Despite the ease of this process, the *Democratic Party* Plaintiffs claim that these photo ID requirements unconstitutionally burden the right to vote and infringe due process because voters will need a "facility with a smart phone equipped with a camera, some other scanning or photographing equipment, or a traditional photocopy machine." Dkt. 62 at 9. Movants put forward declarations from individual voters and election officials who claim that this is impractical. Dkts. 30 ("Koop Decl."), 65 ("Eggen Decl."), 68 ("Love Decl."), 74 ("McDonell Decl."), 76 ("Strang Decl."); Temes Decl.; Bridgeford Decl. These declarations are insufficient to meet movants' heavy obligation to show a burden from these election-integrity laws, let alone establish the type of broad-based burden necessary for their requested overbroad remedy.

To begin, Declarants Temes, Bridgeford, and Koop fail to acknowledge the availability of smartphones to complete this photo ID requirement. Taking a photo of one's photo ID, and then uploading that photo to a government website, qualifies as a "reasonable effort" under *Frank II*. That is less burdensome than "making a trip to the [D]MV, gathering the required documents and posing for a photograph," which the Supreme Court has held "do[ ] not qualify as a substantial burden on the right to vote." *Crawford*, 553 U.S. at 198 (controlling plurality of Stevens, J.).

Next, Declarants Eggen and McDonell—both municipal Clerks—purport to relay calls and messages that they have received from elderly voters who "are not able to leave their homes" and do not "have the technological capability" to send in copies of their photo ID online, Eggen Decl. ¶ 6, or "who are unable to access the internet" and cannot leave their homes because of illness or high-risk complications,

McDonell Decl. ¶ 6.  This second-hand, inadmissible hearsay cannot support a motion for a preliminary injunction.  *See Bernatello's Pizza, Inc. v. Hansen Foods, LLC*, 173 F. Supp. 3d 790, 794 & n.1, 803 (W.D. Wis. 2016) ("affidavit evidence lack[ing] foundation" may not be considered); W.D. Wis., *Procedure To Be Followed On Motions For Injunctive Relief* at 2 n.3 ("Affidavits must be made on personal knowledge setting forth facts that would be admissible in evidence, including any facts necessary to establish admissibility.").[8]  In any event, even assuming the existence and credibility of these unverified, secondhand accounts, if the voters who contacted these declarants are so elderly and infirm as to be "indefinitely confined," they are exempt from the photo ID requirement as a matter of law.  *See* Wis. Stat. §§ 6.86(2)(a), 6.87(4)(b)(2).  This exception may well apply to Declarant Martha Love, who is an 80-year-old citizen.  Love Decl. ¶¶ 1, 4.[9]  And if there actually is some extremely limited category of voters who are not indefinitely confined *and* cannot produce evidence of their photo ID with "reasonable effort[s]" *and* cannot vote in person (and thus produce photo ID at that time), the litigation path for such voters is a limited, as-applied challenge, of the type that the *Democratic Party* Plaintiffs have *not* asked for or sought to prove up.  *See Frank II*, 819 F.3d at 386–87.

---

[8] Available at https://www.wiwd.uscourts.gov/sites/default/files/Injunctive_Relief.pdf.

[9] The *Democratic Party* Plaintiffs claim, based on Declarant McDonell's declaration, that all Wisconsinites are now "effectively [indefinitely] confined," Dkt. 62 at 17 (citing McDonell Decl. ¶ 7), is plainly legally wrong, as explained by the non-partisan Wisconsin Legislative Reference Bureau, *see* Memorandum of Joseph T. Kreye to Majority Leader Scott Fitzgerald, *Questions Related to "Indefinitely Confined" Absentee Ballots* (Mar. 26, 2020), *available at* http://legis.wisconsin.gov/senate/13/fitzgerald/media/1401/absenteeballotquestions_fitzgerald_03262020.pdf.  This issue is presently pending before the Wisconsin Supreme Court on a Petition.  *See Jefferson v. Dane Cty.*, No. 2020AP557 (Wis. *pet. filed* Mar. 27, 2020).

Finally, Dean Strang's declaration undermines the *Democratic Party* Plaintiffs' position. He uploaded a copy of his photo ID and fully completed an electronic absentee-voter application, after spending approximately 40 to 45 minutes on the effort, Strang Decl. ¶¶ 6, 9, which is less than the effort that the Supreme Court has held is permissible in the photo ID context, *Crawford*, 553 U.S. at 198 (controlling plurality of Stevens, J.). While he would prefer an "emailed absentee ballot," Strang Decl. ¶ 8, "it is obvious that a federal court is not going to decree . . . [such] Internet voting" as a constitutional requirement, *Griffin*, 385 F.3d at 1130.

The *Democratic Party* Plaintiffs also briefly claim that the photo ID requirements now violate the Equal Protection Clause under *Bush v. Gore*, Dkt. 62 at 20–21, but this fails for at least three reasons. A *Bush v. Gore* claim is "limited to" the "special instance of a statewide recount under the authority of a single state judicial officer," which is not the circumstance here. 531 U.S. at 109. In any event, the movants here only complain of the alleged disparate implementation of this requirement by Wisconsin municipalities and counties, *e.g.*, Dkt. 55 ¶ 61, which is not a proper claim *against the Commissioners*, *see Lujan*, 504 U.S. at 560. And even if the *Democratic Party* Plaintiffs could assert this claim, they have failed to present the type of extensive "record" evidence necessary to make out a *Bush v. Gore* violation. *See* 531 U.S. at 106; *accord Frank II*, 819 F.3d at 386.

### c. Section 6.87(4)'s Witness-Signature Requirement

Section 6.87(4) requires a voter to sign an absentee ballot "before one witness who is an adult U.S. Citizen," and that witness must also sign the ballot for it to be

counted.  Wis. Stat. § 6.87(4)(b)1; *see* Wis. Stat. § 6.87(2).  This witness requirement prevents voter fraud in multiple ways, such as by adding an additional layer of protection, ensuring that the person filling out the absentee ballot is the actual voter listed on the ballot, and preventing undue influence or coercion.  Without a witness requirement, absentee ballots could be taken from mailboxes and submitted by others, or fall prey to other nefarious techniques.  *See Veasey*, 830 F.3d at 255–56 (recognizing examples of "people who harvest mail-in ballots from the elderly"). Further, this provision "prevent[s] undue influence on an absent elector to vote for or against a candidate."  Wis. Stat. § 6.84.  "[A]n absentee voter can be coerced or pressured into voting the ballot in a certain way, whether through intimidation, other undue influence, or outright vote buying."  Principles of Election Law § 103, cmt. c. (Am. Law Inst. 2018).  Consequently, witness requirements "may reduce but cannot eliminate the potential for this type of fraud and undue influence."  *Id.*  More generally, "[v]oting fraud is a serious problem in U.S. elections generally" and "it is facilitated by absentee voting," *Griffin*, 385 F.3d at 1130–31, since "voting by mail makes vote fraud much easier to commit," *Nader*, 385 F.3d at 734.  Thus, Wisconsin requires this additional election-integrity measure so that "only the votes of eligible voters" are counted.  *Crawford*, 553 U.S. at 196 (controlling plurality of Stevens, J.).

Both the *Democratic Party* and *Gear* Plaintiffs challenge this requirement, but neither carry their heavy evidentiary burden, especially given the overbroad relief that they seek from this Court.

i. The *Democratic Party* Plaintiffs broadly claim that this signature requirement burdens the right to vote and infringes on due-process rights because, due to COVID-19 and the Governor's Order, voters "cannot obtain the signatures needed." Dkt. 62 at 2. These movants assert that this requirement is challenging for individuals who live alone or are quarantined, Dkt. 62 at 8–9, and that it "would require [ ] individuals to come within six feet of each other," Dkt. 62 at 13, which would violate social-distancing requirements and "risk breaking the law" by contravening the Governor's Order, Dkt. 62 at 13. They then submit the declarations of Ben Wilson, Dkt. 75 ("Wilson Decl."); Judith Morse, Dkt. 72 ("Morse Decl."); Jeff Trapp, Dkt. 70 ("Trapp Decl."); Betheny Larson, Dkt. 67 ("Larson Decl."); and John Keel, Dkt. 66 ("Keel Decl."), but these declarations do not carry these movants' heavy evidentiary burden, especially given the broad relief they seek.

As an initial matter, the *Democratic Party* Plaintiffs are incorrect that the Governor's Order prohibits collection of the required witness signatures for absentee ballots. *See* Dkt. 62 at 13. The Order exempts "essential government functions," which would include completing necessary election-related tasks. *See* Dkt. 54-3 (Emergency Order #12) (capitalization altered). For the same reason, a voter can avoid getting a signature by voting at the polls, which can be done consistent with all regulations and public health advisories. *See supra* p. 13. Regardless, a voter can satisfy this requirement today: the voter could, for example, set the ballot down at a neighbor's door, knock, stand six feet away, make the request for the signature, and then have the neighbor leave the now-signed ballot at the door. Further, nothing

prevents an absentee voter from having a witness observe through a window—or even via videocall features on readily available computer and smartphone applications like Skype or Facetime—sliding the ballot to the witness under the door for his signature, then collecting the ballot once the witness is six feet away. *See* Dkt. 63-16 (Briana Reilly, *Voting By Mail in the April 7 Wisconsin Election, Explained*, The Cap Times (Mar. 26, 2020)). Peggy Roush's declaration demonstrates that this can be, and has been, done. Dkt. 69 ("Roush Decl.").

Declarant Wilson claims that he is having difficulty finding a witness to satisfy the signature requirement because "[k]nocking on a neighbor's door or asking a gas station clerk would . . . violate social distancing guidelines." Wilson Decl. ¶ 5. But, as explained immediately above, there are multiple methods for Declarant Wilson to comply with the signature requirement, consistent with social-distancing measures.

Declarants Larson, Keel, and Trapp similarly appear not to have engaged in "reasonable effort[s]" to satisfy the signature requirement. *Frank II*, 819 F.3d at 386–87. All three may well be able to obtain the signature of a neighbor with reasonable effort, just like what Declarant Wilson accomplished, or they could take advantage of third-party groups who are offering to witness absentee-ballot signatures, an avenue available to *all* voters who cannot otherwise meet the witness-signature requirements, *see, e.g.*, Ed Trevelen, *Witness Help for Absentee Ballots Available From 2 Local Groups*, Wis. State J. (Mar. 27, 2020).[10]

---

[10] Available at https://madison.com/wsj/news/local/witness-help-for-absentee-ballots-available-from-two-local-groups/article_ee23d3d5-e7fb-5726-90f3-5cafb34510e6.html.

As for Declarant Morse, she explains that she is "absolutely home-bound and strictly under doctor's orders to not let anyone in [her] home," that "[m]ost of her neighbors are older individuals," and that she has "tried to be diligent" to find a witness, to no avail. Morse Decl. ¶¶ 1, 2, 5. If a voter like Declarant Morse cannot meet the signature requirement after these reasonable efforts, and cannot safely vote in person either, then she may be one of the few voters entitled to narrowly tailored relief under *Frank II*, given her very special circumstance. Yet the *Democratic Party* Plaintiffs have not limited their constitutional challenge to the signature requirement under *Frank II* to this very narrow subset of voters, thus this evidence too fails to support their broad-brush attack on Section 6.87(4).

Finally, these Plaintiffs briefly assert that the signature requirement (and, occasionally, the other election-integrity measures) violates the Equal Protection Clause because of the "conflicting guidance" given regarding this requirement. *See* Dkt. 62 at 20. To begin, although the *Democratic Party* Plaintiffs complain that "application of the documentation requirements for registering to vote and requesting an absentee ballot varies broadly" from one jurisdiction to another, they cite only the single statement from Declarant McDonell erroneously stating that any voter could claim the indefinite-confinement exception to the photo ID requirement due to COVID-19. Dkt. 62 at 20–21 (citing McDonell Decl. ¶ 7). Declarant McDonell's advice is flatly wrong as a matter of law, *see supra* p. 16 n.9, and, in any event, that error cannot be attributed to the Commissioners, *see Lujan*, 504 U.S. at 560. The *Democratic Party* Plaintiffs further complain about "conflicting guidance" over

whether witnessing via Skype or Facetime satisfies Section 6.87(4), yet they cite no conflict. *See* Dkt. 62 at 20 (citing only Dkt. 63-16, which solely recommends this alternative). Next, they claim that voters have received conflicting government guidance between "stay[ing] at home and practic[ing] social distancing" on the one hand, and satisfying the absentee-ballot requirements on the other. Dkt. 62 at 20–21. But, as already explained, the health directives from the CDC and the Governor do not preclude participation in the core democratic process of absentee or in-person voting and, nonetheless, voters may comply with these social-distancing guidelines while still fully participating in the election. *See supra* p. 13. All that said, the *Democratic Party* Plaintiffs' *Bush v. Gore* equal-protection claim is not available here and, to the extent they complain of actions from officials other than the Commissioners, Plaintiffs lack standing. *See supra* p. 17.

ii. The *Gear* Plaintiffs also challenge the signature requirement, contending that this "requirement itself is an incredibly weak anti-fraud tool" for various reasons. *Gear* Dkt. 17 at 3, 7–9. But how States strike the "balance between discouraging fraud and other abuses and encouraging turnout"—including through expanding participation with absentee voting—"is *quintessentially a legislative judgment* with which we judges should not interfere unless strongly convinced that the legislative judgment *is grossly awry*." *Griffin*, 385 F.3d at 1131 (emphases added).

In any event, Wisconsin's signature requirement ensures that anyone who serves as a witness must provide their name and address, which deters precisely the kinds of fraudulent witness certifications that the *Gear* Plaintiffs discuss. *See Gear*

Dkt. 17 at 8. Even if "a determined fraudulent voter will not be deterred" in *every* circumstance "by the separate witness certification," *id.* (emphases omitted), the State is not required to simply do nothing about the problem, *see* Principles of Election Law § 103 cmt. c. (noting that witness requirements "may reduce but cannot eliminate the potential for this type of fraud and undue influence"). The constitutional standard is not whether anti-fraud measures are "indispensable," *see Gear* Dkt. 17 at 9, but whether they further the State's legitimate interest in preventing voter fraud, which they surely do, *see Stone*, 750 F.3d at 681.

The declarations that the *Gear* Plaintiffs have submitted do not support their requested relief. Sylvia Gear has already passed items between herself and others, including her sister, who presumably can serve as a witness, by leaving them "on [Gear's] doorstep." *Gear* Dkt. 9 ¶ 6. She also left her home recently to go to the grocery store and the bank. *Id.* ¶ 4. Malekeh K. Hakami's "daughter-in-law and friends" leave groceries at her front door, so they appear to be readily available witnesses. *Gear* Dkt. 11 ¶ 4. While Patricia Ginter lives by herself, she does not allege that her friends, family, or neighbors would be unwilling to serve as witnesses. *Gear* Dkt. 10 ¶ 1. Further, she has left her home to go to the grocery store. *Id.* ¶ 3. Similarly, Claire Whelan appears to have left home for food and medication. *Gear* Dkt. 12 ¶ 6. But to the extent that any of these voters now cannot leave their homes safely, given their particular health circumstances, their recourse would be limited to narrow, as-applied relief under *Frank II*, which the *Gear* Plaintiffs have specifically not requested. Finally, Marlenne Ott and Debra Cronmiller base their allegations upon

inadmissible, second-hand information about a single unnamed voter, *Gear* Dkt. 13, Ott Decl. ¶ 15, and unsupported speculation that "she *would expect* some voters will not be able to accept" help from organizations willing to provide witnesses. *Gear* Dkt. 14, Cronmiller Decl. ¶ 6 (emphasis added). Indeed, Declarant Cronmiller's declaration cuts against the *Gear* Plaintiffs' arguments by highlighting that the League of Women Voters of Wisconsin is actively "attempting to offer assistance to those voters who are having difficulty finding a friend, neighbor, or relative able to serve as a witness." *Id.*; *see also* Trevelen, *supra*.

### 2. The *Democratic Party* Plaintiffs Cannot Prevail Against Section 6.87(6)'s Election-Day Ballot Delivery Deadline

The *Democratic Party* Plaintiffs again challenge Section 6.87(6)'s provision that absentee ballots must be "delivered to the polling place serving the elector's residence before 8 p.m on election day," while "[a]ny ballot not mailed or delivered as provided . . . may not be counted." Wis. Stat. § 6.87(6). This ensures the "orderly administration" of Wisconsin's elections, *Crawford*, 553 U.S. at 196 (controlling plurality of Stevens, J.), by allowing for adequate time to canvass the election results, Tseytlin Decl. Ex. 9 (Administrator Meagan Wolfe, *Update Regarding COVID-19 Election Planning* (Mar. 18, 2020) ("Administrator Memo") 2). So, this statute too advances the State's "compelling interest in preserving the integrity of its election process," *Eu*, 489 U.S. at 231, and has a "plainly legitimate sweep," *Crawford*, 553 U.S. at 202 (controlling plurality of Stevens, J.) (citation omitted).

The *Democratic Party* Plaintiffs renew their claim that Section 6.87(6) violates constitutional voting rights and procedural-due-process rights because of the alleged

overburdening of clerks' office staff with absentee-ballot requests. Dkt. 62 at 12. But as this Court already held, there is no need to "speculate about the need for th[e] relief" of extending Section 6.87(6)'s deadline "on the limited record before" the Court. Order, Dkt. 37 at 17. Rather, the Court may simply wait until after election day to determine whether any remedy is necessary or appropriate. *Id.*

This remains true even after considering movants' additional declarations on this score. Declarant Witzel-Behl, the City Clerk for the City of Madison, explains current logistical problems impacting her office's ability to timely process absentee-voting applications, as required by state law, yet this does not justify the Court's action now. *See* Dkt. 77 ("Witzel-Behl Decl.") ¶ 9. She notes the additional efforts her office has taken to help clear the "backlog" of absentee-voter requests. Witzel-Behl Decl. ¶¶ 4, 9. This Court should wait until after election day to determine whether those efforts ultimately proved successful, *see* Dkt. 73 ("Albrecht Decl.") ¶ 6 (explaining that his "staff is working diligently to process these requests and answer questions, but it is extremely busy"). Declarant Witzel-Behl believes that her office's efforts will be in vain—claiming that "thousands of voters will be unable to exercise the franchise" due to this backlog—but she provides nothing to substantiate her estimation. Witzel-Behl Decl. ¶ 8.[11] Declarant McDonell, the County Clerk for Dane County, expresses concern that recruiting poll workers would violate state "directives" like the Governor's Order, but this is incorrect. McDonell Decl. ¶ 4.

---

[11] Multiple declarants also state that they are "worried" about their absentee ballots arriving past Section 6.87(6)'s deadline. *E.g.*, Morse Decl. ¶ 6. But this abstract concern fails to justify the need for any relief at this premature stage. *See* Order, Dkt. 37 at 17.

Election workers are exempt from the Governor's Order as essential government functions. Dkt. 54-3 (Emergency Order #12).[12]

### 3. The *Democratic Party* Plaintiffs Cannot Prevail Against Section 6.28(1)'s Registration-By-Mail Deadline

Section 6.28(1), as relevant here, provides that "[r]egistrations made by mail" for an election must be submitted by "the 3rd Wednesday preceding the election." Wis. Stat. § 6.28(1). This establishes a clear deadline for registration in advance of the election, enabling the Commission to verify residency status and the accuracy of voter-registration information. *See* Tseytlin Decl. Ex. 9 (Administrator Memo 2); *see Purcell*, 549 U.S. at 4.

The *Democratic Party* Plaintiffs broadly claim that the mail-registration deadline burdens voting rights and violates due process because "thousands of Wisconsin citizens are not afforded an equal opportunity to register," which "severely burden[s] their right to vote." Dkt. 62 at 15. Yet, for support they provide only a few declarations of individual voters who missed this deadline for various reasons. *See* Dkt. 31 ¶ 3 ("Dickey Decl."); Temes Decl. ¶ 5; Bridgeford Decl. ¶¶3, 4. These anecdotes do not come close to proving their wholesale challenge to this law. *Crawford*, 553 U.S. at 200 (controlling plurality of Stevens, J.). Extending this date would cause implementation problems—as this Court correctly recognized, Order,

---

[12] Several voter declarations mention the desire to "wait as close to Election Day as possible" to mail an absentee ballot "so [they] can obtain as much information as [they] can about the candidates and issues," Larson Decl. ¶ 2; *see also* Trapp Decl. ¶ 6; Callahan Decl. ¶ 5, and "avoid voting for a candidate who might later drop out of the race," Keel Decl.¶ 6; Larson Decl. ¶ 2; Callahan Decl. ¶ 5. But the cost of voting with less-than-perfect information is inherent in *every* absentee vote. *See Griffin*, 385 F.3d at 1131. And voters unwilling to accept this cost may simply vote in person, at the polls, thus fully avoiding this concern. *Id.*

Dkt. 37 at 14—because not every county in Wisconsin may be able to process "registration forms received after April 3" for inclusion in the printed pollbooks. Dkt. 26 at 3, 8–9. The *Democratic Party* Plaintiffs offer no response to these concerns.

## B. Plaintiffs Have Not Shown That They Will Suffer Irreparable Harm Absent An Injunction

Plaintiffs have the burden of demonstrating that "irreparable injury is *likely* in the absence of an injunction," not just a mere "possibility." *Winter v. Nat. Res. Def. Council,* 555 U.S. 7, 22 (2008). Further, "[a]bstract injury is not enough. The plaintiff must show that [it] has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." *City of Los Angeles v. Lyons,* 461 U.S. 95, 101–02 (1983) (citations omitted).

Plaintiffs have failed to show that they will suffer irreparable harm absent preliminary-injunctive relief here. On the election-integrity measures, *supra* Part I.A.1., compliance with Section 6.34(2)'s proof-of-residency requirements is minimally burdensome, *supra* Part I.A.1a., as is Section 6.87(1)'s photo ID requirement, *supra* Part I.A.1b. Further, there are ample means for satisfying Section 6.87(4)'s absentee-ballot witness-signature requirement, consistent with both the Governor's Order and social-distancing directives. *Supra* Part I.A.1c. And for any particular voters with exceptional circumstances preventing them from complying with these election-integrity measures with "reasonable effort," they may seek narrowly tailored, as-applied relief under *Frank II*, 819 F.3d at 386—which relief, again, movants have not sought in this case. The same conclusion obtains for Section 6.87(6)'s election-day

deadline, *supra* Part I.A.2., and Section 6.28(1)'s registration-by-mail deadline, *supra* Part I.A.3: the *Democratic Party* Plaintiffs have not put forward competent evidence showing a likelihood of any voter being burdened by these provisions, as opposed to a mere possibility. *See Winter*, 555 U.S. at 22.

### C. Plaintiffs Have Not Submitted Competent Evidence To Support Their Claim That The Public Interest Favors Relief

The multiple election laws challenged here support Wisconsin's compelling interests in protecting the integrity of its elections and the public's trust in that integrity, and ensuring the "orderly administration" of its elections. *E.g.*, *Eu*, 489 U.S. at 231; *Crawford*, 553 U.S. at 196 (controlling plurality of Stevens, J.); *see supra* Part I.A. This Court enjoining these laws now, in the middle of an ongoing election, will harm these compelling state interests with no corresponding benefit to the public, given the facility with which voters may satisfy these laws' obligations. *See supra* Part I.A.1–3. Further, given that "[a]bsentee ballots remain the largest source of potential voter fraud," Carter-Baker Comm'n 46, the risks inherent in removing these protections are great. Such fraud not only distorts the results of the election in which it occurs, but it also "drives honest citizens out of the democratic process and breeds distrust of our government," harming the public interest for years to come. *Purcell*, 549 U.S. at 4. At minimum, given that the enforcement of duly enacted laws is otherwise presumed to be in the public interest, *Abbott v. Perez*, 138 S. Ct. 2305, 2324 & n.17 (2018); *FTC v. Elders Grain, Inc.*, 868 F.2d 901, 904 (7th Cir. 1989), movants' absence of competent proof means that they cannot obtain injunctive relief.

The public interest further disfavors Plaintiffs' requested relief under the *Purcell* principle, which instructs that courts should not change election rules in the middle of an ongoing election, as such changes can "result in voter confusion and consequent incentive to remain away from the polls." *Purcell*, 549 U.S. at 4–5. "[A]s an election draws closer, that risk will increase." *Id.* at 5. Here, with the April 7 election in full swing, movants request that this Court upend Wisconsin's election scheme—including by suspending critical portions of voter registration, photo ID, and absentee-ballot-signature requirements. The statutory deadlines for electronic registration and registration by mail have passed, Wis. Stat. § 6.28(1)—this Court's prior Order extends the electronic-registration deadline through today, Order, Dkt. 37 at 20—and the essential verification of those registrations is ongoing, Tseytlin Decl. Ex. 9 (Administrator Memo 2). The Commission is still publicly urging electors to request absentee ballots, *see* Tseytlin Decl. Ex. 14 (Wis. Elections Comm'n, *Wisconsin Elections Commission Responds to Coronavirus COVID-19, Urges Absentee Voting* (Mar. 13, 2020)), and the public has until April 2 to make such requests. All forms of absentee voting are well underway. The numerous clerks across the State will soon "create and print" the official "poll lists" for Election Day, given that relevant deadlines have now passed. Tseytlin Decl. Ex. 9 (Administrator Memo 2). And election-day, in-person registration and voting will move forward next week, on April 7, with Wisconsin's election-integrity measures like the proof-of-residency, photo ID, and absentee-ballot-signature requirements in place. Under the

*Purcell* principle, this Court should not disturb and confuse these ongoing election operations.

### D. The State Will Suffer Irreparable Harm As A Matter Of Law From The Relief That Plaintiffs Have Requested

Finally, any time a State is enjoined by a court from effectuating statutes enacted by the representatives of its people—as the *Democratic Party* and *Gear* Plaintiffs request here—it suffers a form of irreparable injury. *Abbott*, 138 S. Ct. at 2324 & n.17. Further, given that the "State indisputably has a compelling interest in preserving the integrity of its election process," *Eu*, 489 U.S. at 231, the irreparable harm to the State and the public from an injunction would be especially grave here. In particular, the election-integrity provisions are necessary to stave off the "serious problem" of "[v]oting fraud," which is exasperated by "absentee voting," *Griffin*, 385 F.3d at 1130–31, given that "voting by mail makes vote fraud much easier," *Nader*, 385 F.3d at 734. Eliminating any or all of those provisions for the ongoing election would result in deep, irreparable harm to the State, as it would leave Wisconsin's "election system" largely "unregulated" in this respect—leaving the State in "chaos." *Griffin*, 385 F.3d at 1130; *accord Burdick*, 504 U.S. at 433.

## CONCLUSION

This Court should deny the Motions filed by the Democratic Party Plaintiffs and the Gear Plaintiffs.

Dated this 30th day of March, 2020.

Respectfully submitted,

/s/Misha Tseytlin
Misha Tseytlin (State Bar No. 1102199)
Kevin M. LeRoy (State Bar No. 1105053)
TROUTMAN SANDERS LLP
227 W. Monroe St., Suite 3900
Chicago, IL 60606
(608) 999-1240
(312) 759-1939 (fax)
misha.tseytlin@troutman.com
kevin.leroy@troutman.com

Eric M. McLeod (State Bar No. 1021730)
Lane E. Ruhland (State Bar No. 1092930)
HUSCH BLACKWELL LLP
P.O. Box 1379
33 East Main Street, Suite 300
Madison, WI 53701-1379
(608) 255-4440
(608) 258-7138 (fax)
eric.mcleod@huschblackwell.com
lane.ruhland@huschblackwell.com

Lisa M. Lawless (State Bar No. 1021749)
HUSCH BLACKWELL LLP
555 East Wells Street, Suite 1900
Milwaukee, WI 53202-3819
(414) 273-2100
(414) 223-5000 (fax)
lisa.lawless@huschblackwell.com

Scott A. Keller
BAKER BOTTS LLP
700 K Street, N.W.
Washington, DC 20001
(202) 639-7837
(202) 585-1023 (fax)
scott.keller@bakerbotts.com

*Attorneys for the Wisconsin Legislature*