IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

REVEREND GREG LEWIS, SOULS TO THE
POLLS, VOCES DE LA FRONTERA, BLACK LEADERS
ORGANIZING FOR COMMUNITIES, AMERICAN
FEDERATION OF TEACHERS LOCAL, 212, AFL-CIO,
SEIU WISCONSIN STATE COUNCIL, and LEAGUE
OF WOMEN VOTERS OF WISCONSIN,

                     OPINION AND ORDER

       Plaintiffs,

 v.                      No. 20-cv-284-wmc

MARGE BOSTELMANN, JULIE M. GLANCEY, ANN S.
JACOBS, DEAN KNUDSON, ROBERT F. SPINDELL, JR.
MARK L. THOMSEN and MEAGAN WOLFE,

       Defendants.

Plaintiffs Greg Lewis, Souls to the Polls, Voces de la Frontera, Black Leaders Organizing for Communities, American Federation of Teachers Local, 212, AFL-CIO, SEIU Wisconsin State Council, and League of Women Voters ("the Lewis plaintiffs") sued members of the Wisconsin Elections Commission ("WEC") for alleged violations of the Voting Rights Act of 1965 and the Equal Protection Clause of the Fourteenth Amendment during the April 2020 Wisconsin election. Specifically, due to the risk of COVID-19 exposure associated with crowds at in-person polling stations, the Lewis plaintiffs assert the WEC was required to reschedule the election and to expand access to mail-in voting by pushing back the deadline by which those votes must be received. According to the Lewis plaintiffs, refusal to do so would also disproportionately threaten the right to vote of elderly, black and Latinx Wisconsinites, each of whom are statistically less likely to request mail-in ballots, and due to the rapid onset of the pandemic, absent judicial intervention,

would have had: (1) insufficient time to register, receive, and return an absentee ballot by election day; and as a result, (2) the difficult choice of either facing grave health risks to vote in-person *or* foregoing their vote entirely.

With the April 2020 election fast approaching, the Lewis Plaintiffs' case was joined with that of two other lawsuits, one of which was further along in briefing entitlement to relief under both the Voting Rights Acts and the Equal Protection Clause. With respect to the April election, the court granted all plaintiffs a preliminary injunction extending the deadline for absentee ballots to be received from April 7 to April 13, 2020, along with other, arguably modest relief later overturned on appeal.

In light of the small but not insignificant benefit achieved by the grant of this limited preliminary injunction, the Lewis plaintiffs subsequently filed a motion for attorney's fees under 42 U.S.C. § 1988(b). (Dkt. #176.) Section 1988(b) empowers courts with the discretion to award attorney's fees to a party prevailing on civil rights claims, like those filed by the plaintiffs here. The court will deny the Lewis Plaintiffs' motion for attorney's fees because although the extension of the receipt deadline for absentee ballots was a significant achievement, this achievement did not result solely from the Lewis plaintiffs' actions, and it is much more likely that the same result would have occurred even if the Lewis plaintiffs had not sued.

OPINION[1]

A court may award attorney's fees to a prevailing plaintiff in a civil rights case. 42 U.S.C. § 1988(b). For the purposes of this section, "prevailing" means "the plaintiff has succeeded on 'any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit.'" *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791-92 (1989) (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278-79 (1st Cir. 1978)). Moreover, for an outcome to constitute a qualifying significant "benefit," a plaintiff must receive some form of judicial relief on the merits of the case, that is to say "a resolution of a dispute which changes the legal relationship between [plaintiff] and the defendant." *Hewitt v. Helms*, 482 U.S. 755, 760-61 (1987).

In disputing whether the court should exercise its discretion to award the Lewis plaintiffs' attorney fees, the parties focus on three, principal questions: (1) whether the six-day extension of the ballot receipt deadline was a benefit considering other pursued remedies; (2) whether the Lewis plaintiffs were the ones to achieve that benefit; and (3) whether the preliminary injunction and temporary restraining order that granted the extension changed the legal relationship of the parties. Although answering each of these

---

[1] The Lewis plaintiffs also filed a motion for costs of $1,256.56 under 28 U.S.C. § 1920 and Federal Rule of Civil Procedure 54(d)(1), which states that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." While there is a presumption of an award of costs to the prevailing party under Rule 54(d)(1), because the court here determines that the Lewis plaintiffs are not a prevailing party for purposes of shifting fees under § 1988, it also concludes that they are not entitled to costs under § 1920 and Rule 54. *See Walker v. City of Chi.*, 513 F. App'x 593, 597 (7th Cir. 2013) (discussing interplay between § 1988 and Rule 54); *see Hastert v. Ill. State Bd. of Election Comm'rs*, 28 F.3d 1430, 1438 (7th Cir. 1993), *as amended on reh'g* (June 1, 1994) (explaining that § 1988 attorney fee petitions were originally treated as motions for cost under Rule 54).

questions below, this court finds that an award of fees to the Lewis plaintiffs alone would significantly overstate their limited, largely duplicative role in obtaining the modest though significant benefit of an injunction also sought by two other groups of plaintiffs in related lawsuits.

I. **The six-day extension of the absentee ballot receipt deadline was a significant benefit.**

As noted, this court issued a preliminary injunction that ultimately had the effect of counting all absentee ballots postmarked by election day, April 7, and received by April 13, 2020, at 4:00 pm, rather than counting only those ballots physically received by election day. According to a careful, post-election count by the WEC itself, this modest, six-day extension resulted in an additional 79,054 ballots being counted, constituting 6.68% of the total number of ballots counted in Wisconsin for the Spring 2020 elections. *See Wisconsin Election Commission April 7, 2020 Absentee Voting Report*, May 15, 2020.

Nevertheless, the WEC argues that because the Lewis plaintiffs did not receive the entirety of the relief sought from this court, they did not achieve a significant benefit. In support of this allegation, the WEC suggests that the Lewis plaintiffs either did not succeed on any claim because the court only extended the receipt deadline to April 13 and not June 2 as they had initially requested, or that they achieved only 15% of one of their stated goals. These somewhat contradictory suggestions by the WEC are wholly unpersuasive. First, as the WEC itself notes at one point in briefing this issue, "[t]he degree of success is relevant to what a reasonable fee would be", and not whether the plaintiff is entitled to fees more generally. (Defs.' Opp'n (dkt. #366) 10.) *See also Garland*, 489 U.S. at 790

4

(observing that "the degree of the plaintiff's success in relation to the other goals of the lawsuit is a factor critical to the determination of the size of a reasonable fee, not to eligibility for a fee award at all").

Second, the WEC's suggestion that a smaller victory than initially sought would bar a plaintiff from being considered a "prevailing party" at all conflicts with precedent. As the Supreme Court explained in *Garland*, the proper standard for assessing whether a party is entitled to fees is whether it has prevailed on "any significant claim affording it some of the relief sought." 489 U.S. at 791. From the outset, one of the principal claim of all plaintiffs in the three lawsuits was the violation of the Voting Rights Act if absentee, mail-in ballots were not accepted beyond election day, especially in the Spring of 2020 given the unknown risks of in-person voting, the rapid closing of the mail-in ballot window *and* the very real problems that the U.S. Mail had itself, all of which made a perfect storm for thousands of mail-in ballots not to arrive by election day. And additional ballots *were* accepted beyond election day that would have otherwise been invalidated. Thus, the difference between the requested ballot receipt deadline and the ordered ballot receipt deadline is not nearly as relevant to the significance of the plaintiffs' victory as is the fact that it enabled over 79,000 Wisconsinites the fundamental right to have their vote count. Plus, in *Garland*, the Supreme Court expressly held that a "significant issue" must be at stake, while only "some" of the benefit sought need be achieved.

Third, and finally, even if a "significant benefit" were required, the WEC's argument still falls flat. Regarding the significance of the plaintiffs' victory, the WEC concludes its argument by observing that because the Lewis plaintiffs only received relief "somewhat

5

similar" to that requested in their complaint, they are "a plaintiff who deserved no attorney's fees at all" if there ever was one. (Defs.' Opp'n (dkt. #366) 12 (quoting *Farrar v. Hobby*, 506 U.S. 103, 116 (1992) (O'Connor, J., concurring)).) This reference to *Farrar* is sorely misplaced. The plaintiff in *Farrar* achieved $1 in nominal damages, which Justice O'Connor and the majority unsurprisingly considered to be *de minimis* and dispositive of any award of attorney's fees. The enfranchisement of over 79,000 voters is hardly so *de minimis* a victory that it should preclude an award of any attorney's fees in and of itself. As such, the six-day extension of the ballot receipt deadline might have entitled the Lewis Plaintiffs to attorney's fees if they had been the primary party to achieve this victory.

## II. The Lewis Plaintiffs' filings were not primarily responsible for the extension of the absentee ballot receipt deadline.

Despite the significance of the widespread voter enfranchisement, the *Lewis plaintiffs* certainly did not achieve this victory on their own, nor were they primarily responsible for it. As already explained, the Lewis plaintiffs' case was joined with two other cases requesting similar, preliminary relief from the court. The first of these complaints filed was by the Democratic National Committee ("DNC") and the Democratic Party of Wisconsin ("DPW") on March 18, 2020. *Democratic Nat'l Committee v. Bostelmann*, No. 20-cv-249 (W.D. Wis. Mar. 18, 2020) (dkt. #1). The DNC and DPW were also the first plaintiffs to seek a preliminary injunction moving back the date by which absentee ballots must be received to be counted. *Democratic Nat'l Committee*, No. 20-cv-249 (W.D. Wis. Mar. 27, 2020) (dkt. #61). In contrast, the Lewis plaintiffs filed this lawsuit on March 26, 2020, over a week after DNC and DPW, and filed a motion for temporary restraining

6

order on March 28, 2020. (Dkt. ##1, 17.) The third group of plaintiffs, which included members of the Wisconsin Alliance for Retired Americans and the League of Women Voters, also filed suit and its motion for a temporary restraining order on the *same* dates as the Lewis plaintiffs. *Gear v. Knudson*, No. 20-cv-278 (W.D. Wis. March 26, 2020) (dkt. ##1, 8).

While it is difficult to assess the *precise* impact that each of the joint plaintiffs' arguments had on persuading the court that relief was appropriate, the number of times the court cited to each of the three cases' materials in its opinion granting preliminary relief is a very helpful proxy, since it is the only opinion in which any of the plaintiffs could be considered to have prevailed. In that opinion, the court cites to the '249 *DNC/DPW* case 72 times, to the '284 *Lewis* case 21 times and to the '278 *Gear* case 17 times. Moreover, the lead counsel for plaintiffs throughout all proceedings involving plaintiffs' motions for preliminary injunction and temporary restraining order was the DNC/DPW, who generally spoke for all plaintiffs. Given the prominent role played by the law firm and counsel representing the DNC/DPW, the court has little hesitation in finding that had the *Lewis* plaintiffs never filed a complaint or brought a motion for preliminary injunction, the court would have issued the same relief. Indeed, without in any way diminishing the importance of issues presented in the case to both the *Lewis* and the *Gear* plaintiffs and their counsel, they were largely along for the ride while the *DNS/DPW* plaintiffs and attorneys were in the driver's seat. Thus, the court finds that any benefit achieved in this and the other two lawsuits was *not* as a result of the Lewis plaintiffs' or their attorneys' actions.

7

### III. The preliminary injunction cannot be said to have definitively changed the legal relationship of plaintiffs and defendants.

Having concluded that the success achieved was not sufficiently related to the Lewis plaintiffs' complaint and motion to warrant an award of attorney fees, the court will only briefly address the final dispute between the parties: whether the preliminary injunction constituted a judicially sanctioned change in the relationship of the parties. While the Lewis plaintiffs claim that their motion for a temporary restraining order is responsible for the six-day extension of the ballot receipt deadline, the WEC claims that the order was not responsible for that change because it had already conceded a move of the date was appropriate even before the order was issued. Of course, whether the parties' changed relationship was due to the clearly forthcoming preliminary injunction order by the court, and the WEC's understandable interest in helping craft it, or to other factors playing out in a hectic election period during a global pandemic, the court agrees that over the course of briefing and argument on the merits of plaintiffs' motion for a preliminary injunction, the WEC largely ended up playing a "middle man role," as the party that would be principally charged with implementing any accommodations or changes to the election that the court might issue.

As a result, it was really the intervening defendants in the *DNC/DPW* litigation who ended up opposing the relief ultimately granted by this court. Indeed, the changed composition of the WEC membership (three appointed by Republicans and three by Democrats) all but assured a fairly neutral stance by that body, and as a result, no discernable change in the long run between the WEC and plaintiffs, including the Lewis plaintiffs. Finally, the reality is that the relief granted proved valuable to plaintiffs for the

8

Spring 2020 election only.

Thus, because the Lewis plaintiffs' actions were not responsible for the court's issuance of the preliminary injunction order, that order cannot be said to have changed the legal relationship between the parties going forward, and the benefit itself, though significant, was limited to a single election..

ORDER

IT IS ORDERED that plaintiffs' motion for attorney fees, costs and expenses (dkt. #176) is DENIED.

Entered this 12th day of May, 2022.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge